■ In the Matter of PHILIPPE IFRAH, Appellant, v W. CHARLES UTSCHIG, JR., et al., Respondents. [723 NYS2d 61] —In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Harrison dated January 7, 1999, which, after a hearing, denied the petitioner's application for four area variances, the petitioner appeals from a judgment of the Supreme Court, Westchester County (Nastasi, J.), entered October 18, 1999, which denied the petition and dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with costs, the petition is granted, the determination is annulled, and the matter is remitted to the respondents to issue the area variances.

The petitioner owns a parcel of land in the Town of Harrison, Westchester County. The parcel consists of two lots which

were merged in 1974 as a result of common ownership. It is located in a residential zoning district which requires one acre of land in order to erect a one-family dwelling. The petitioner sought to subdivide the parcel into two lots as they existed before they merged, which would create two substandard lots. In 1997 he applied for the four area variances required for the subdivision.

After a hearing, the respondent Zoning Board of Appeals of the Town of Harrison (hereinafter the ZBA) denied the application, finding, *inter alia*, that granting the area variances would have a significant impact on and would change the character of the neighborhood. Thereafter, the petitioner commenced the instant proceeding, claiming, among other things, that the determination of the ZBA was arbitrary and capricious. The Supreme Court denied the petition and dismissed the proceeding. We reverse.

The petitioner showed that 33 of the 39 lots within 500 feet of his parcel are substandard, and 20 of those 39 lots are smaller than the smaller of the two lots which would be created by subdividing his parcel. The evidence before the ZBA did not support its conclusion that granting the area variances would create a significant impact on and change the character of the neighborhood (*see, Matter of Easy Home Program v Trotta,* 276 AD2d 553; *Matter of Peccoraro v Humenik,* 258 AD2d 465; *Matter of Eung Lim-Kim v Zoning Bd. of Appeals,* 185 AD2d 346; *Matter of Rider v Board of Appeals,* 172 AD2d 673). Under these circumstances, the denial of the application is not supported by substantial evidence in the record, and the ZBA abused its discretion in denying the area variances (*see, Matter of Cassano v Zoning Bd. of Appeals,* 263 AD2d 506; *Matter of Goldsmith v Bishop,* 264 AD2d 775). Therefore, the judgment is reversed, the petition is granted, the determination denying the area variances is annulled, and the matter is remitted to the respondents to issue the area variances (*see, Matter of Cassano v Zoning Bd. of Appeals, supra; Matter of Goldsmith v Bishop, supra*). S. Miller, J. P., Friedmann and Florio, JJ., concur.

Krausman, J. dissents, and votes to affirm the judgment, with the following memorandum: I believe that the determination of the Zoning Board of the Appeals of the Town of Harrison is supported by substantial evidence, and would affirm the judgment dismissing this proceeding.

At issue in this case is whether the petitioner should be granted area variances permitting him to subdivide a lot on Fenimore Drive in the Town of Harrison, and build a second

house on his property. Fenimore Drive is comprised of Tudor-style brick houses, which were constructed in the late 1920's and early 1930's. According to its residents, the street is named after the famous American author James Fenimore Cooper, and has a unique old world charm. Although many of the houses on Fenimore Drive are situated on relatively small lots, the lots appear larger because of their width, which allows for an average spacing of approximately 55 feet between the homes. Since 1968, Fenimore Drive has been classified as an R-1 residential zone, requiring new homes to be constructed on one-acre lots, with a minimum lot width of 100 feet, minimum front yard of 40 feet, and minimum side yard of 20 feet.

In 1996, the petitioner purchased 38 Fenimore Drive, a single-family residence constructed in 1928, which is located on the southern portion of a .77-acre parcel. Although the Town's 1928 subdivision map originally designated the property as two separate lots, the lots merged because they were held in common ownership after the enactment of the Town's zoning ordinance. Several months after purchasing the property, the petitioner submitted an application to the Town's Planning Board seeking to subdivide the property into two separate lots of approximately .40 and .37 of an acre. As proposed by the petitioner, lot 1a, which contains the existing dwelling, would have a width of 93.13 feet, and lot 1b would have a width of 79.16 feet. Since a new house could not be constructed on lot 1b unless several area variances were to be granted, the Planning Board referred the matter to the Town's Zoning Board of Appeals (hereinafter the ZBA).

The petitioner's neighbors strenuously objected to dividing the already nonconforming lot into two smaller nonconforming lots. In their letters to the ZBA, the neighbors raised several safety and environmental concerns. For example, two residents pointed out that 38 Fenimore Drive is located on a blind curve in the road where three branches of Fenimore Drive intersect, and argued that building a new house on a site where there is restricted visibility of the upper portion of Fenimore Drive would create a dangerous situation. Other residents pointed out that Fenimore Drive is very narrow, and that the residents of 38 Fenimore Drive customarily park in front of the residence, which can make it difficult for emergency vehicles to get through and for the street to be cleared of snow in the winter. A 96-year-old resident, who had lived on the block since 1946, expressed concern that a new house would increase traffic in an area where children gather to play. Another resident argued that the addition of a new house at the proposed site would

exacerbate flooding problems in a flood-prone area. It was also noted that the new house would have less frontage on Fenimore Drive than 75% of the other homes. In addition, residents voiced distress that the architectural integrity of the neighborhood, which is composed of houses of similar style, age and size, would be compromised by the addition of a large new house.

Following a public hearing, the ZBA denied the petitioner's application, stating that it had carefully considered the factors set forth in Town Law § 267-b, and that granting the variance would create two substantially substandard lots, and have a significant impact on the character of the neighborhood. The petitioner then commenced this proceeding pursuant to CPLR article 78 to review the determination of the ZBA. The Supreme Court denied the petition and dismissed the proceeding, concluding that the determination of the ZBA was rational and supported by the record. I would affirm.

As amended effective July 1, 1992, Town Law § 267-b (3) enumerates the factors that a Zoning Board must consider in determining whether to grant an area variance. Pursuant to the statute, the Zoning Board shall consider, *inter alia*, (1) whether an undesirable change will be produced in the character of the neigborhood or a detriment to the nearby properties will be created by the granting of the area variance, (2) whether the benefit sought by the applicant can be achieved by some other method, feasible for the applicant to pursue, other than an area variance, (3) whether the requested area variance is substantial, (4) whether the proposed variance will have an adverse impact on the physical or environmental conditions in the neighborhood or district, and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the Board of Appeals, but shall not necessarily preclude the granting of the area variance. In reviewing a decision made by a Zoning Board which has balanced these factors, the court's role is limited to determining whether the action taken by the Zoning Board has a rational basis and is supported by substantial evidence (*see, Matter of Sasso v Osgood,* 86 NY2d 374, 384; *Matter of O'Neill v Board of Zoning Appeals,* 225 AD2d 781).

Here, the majority concludes that the determination of the ZBA is arbitrary and not supported by substantial evidence because nearly all of the lots within 500 feet of the petitioner's property are substandard, and many of these lots are smaller than the proposed new lot. While this is true, it fails to take into the account the fact that the Tudor style homes on Feni-

more Drive were built many years before the enactment of the Town's zoning code, and that the construction of a large new home on a newly-subdivided lot would disturb the architectural beauty of the neigborhood, which its residents have strived to preserve. Furthermore, there are other factors that weigh in favor of the determination of the ZBA. In their letters to the ZBA and at the public hearing, the residents of Fenimore Drive expressed legitimate safety and environmental concerns. Moreover, the variances sought are very substantial in nature. It is also significant to note that the petitioner was aware that the property was located in an R-1 residential zone when he purchased 38 Fenimore Drive, and that the determination of the ZBA merely prohibits him from realizing additional profit by constructing a second house on his property. Taking these circumstances into account, I find that there is substantial evidence to support the determination to deny the petitioner's application (*see, Matter of Strohli v Zoning Bd. of Appeals*, 271 AD2d 612; *Matter of O'Neill v Board of Zoning Appeals, supra*).